**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JAMES RICHARD DUDLEY,**

    **Plaintiff,**

    v.                                          **CASE NO.  23-3074-JWL**

**KANSAS DEPARTMENT OF**
**CORRECTIONS, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  Plaintiff is a prisoner at the El Dorado Correctional Facility ("EDCF"), in El Dorado, Kansas.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  (Doc. 7).  This matter is before the Court for screening of Plaintiff's Complaint under 28 U.S.C. § 1915A.

**I.  Nature of the Matter before the Court**

Plaintiff alleges in his Complaint (Doc. 1), which is not on the court-approved form, that officials at three different correctional facilities retaliated against him for exercising his right to file grievances and lawsuits.

Plaintiff states that he filed a grievance against Corrections Officer ("CO') Warren on 3/8/21.  After he received the final response to the grievance on 4/23/21, he began receiving "petty" disciplinary reports ("DRs") from Hutchinson Correctional Facility ("HCF") COs.  (Doc. 1, at 11.) He alleges that he was harassed by COs in the chow hall almost every day: "Dudley, you need to leave the chow hall."  Plaintiff would respond that he just got there only 5-10 minutes ago. (*Id*.) Then, Plaintiff began being denied his law library passes in the mornings by COs Simon, Brown

and Williams. (*Id*. at 12.) On three occasions, Plaintiff had anxiety attacks. On the third, CO Kipp said, "You're already going to the hole, Dudley. Might as well take you now." (*Id*. at 12.) Plaintiff says that he was told by another CO that he was "being fucked with, please just cuff up before they get here because they aren't playing fair." (*Id*. at 12-13.)

The Complaint alleges that Plaintiff was laid in from the yard and law library from 5/23/21-6/2/21, when he was taken to the Restrictive Housing Unit ("RHU"). (*Id*. at 13.) He states that he had "a couple issues" in RHU. He took his shirt off in the yard (just like all the other prisoners) but received a DR; he refused an order to go into his cell after a CO had dumped his legal mail and documents all over the cell and, as a result, CO Kipp told them to put him on MRA in a box cell; and he received a DR for refusing to go on crises level when he first came to RHU. (*Id*. at 13.)

Plaintiff alleges that while he was in on the RHU, CO Rebecca Smith told him, "You don't sue our officers." (*Id*. at 13.) Then, when the segregation review board voted on 8/13/21 to return him to the general population, CO Smith went to CO Hertel who then called Warden Schnurr, and Plaintiff remained on the RHU. (*Id*. at 14.) Also, CO Smith began ordering that Plaintiff receive short rations trays. (*Id*. at 15.)

According to the Complaint, CO Pettijohn said to Plaintiff, "They're fucking with you." (*Id*. at 14.) "Virtually all officers" at HCF began treating Plaintiff like dirt by being extremely argumentative and making him beg for basic items. (*Id*. at 15.)

Centurion, the contracted medical provider for the KDOC, took Plaintiff off of his anxiety medication, and he began having "rage attacks" and panic attacks triggered by the COs' retaliatory harassment. (*Id*. at 16.) In this way, Centurion deliberately aided the retaliation on Plaintiff for pursuing grievances and legal action. (*Id*.) Centurion began "harassing" Plaintiff with "unwanted" antipsychotic medication. (*Id*.) Plaintiff signed a refusal form on 5/29/21. (*Id*.)

The Complaint further claims that CO Smith would provoke Plaintiff to the point of him losing control and becoming violent. Then, she would have him put on crises level or in an MRA cell. (*Id*. at 17.) CO Gonzalez deprived Plaintiff of a total of 21 meals and had "a motive." (*Id*.) CO Flores told Plaintiff, "You think you are going to sue us and batter our officers and get away with it?" (*Id*.) Then, she assembled a team of officers and forced Plaintiff onto crises level by spraying him with 2 full cans of pepper spray and having officers beat him up. (*Id*.)

Plaintiff was transferred to the Lansing Correctional Facility ("LCF") on 2/9/22, nine days after he filed a motion in court (and after CO Hoffman "engaged Plaintiff in physical combat on a staircase.") (*Id*. at 14-15.) Plaintiff was placed on MRA status "by the officers at LCF provoking him into 'rage attacks' every time he filed a significant legal motion in this court." (*Id.* at 19.)

Also at LCF, Plaintiff alleges that CO Lechliter "allowed" another prisoner to spray liquid feces all over him. Lechliter "allowed" the prisoner to "take hostage his food pass" and did not instruct his officers to protect Plaintiff. (*Id*.) Then, CO Busby battered Plaintiff by repeatedly slamming Plaintiff's arm down on the food pass. (*Id*.) Plaintiff asserts that he was denied all medical attention and was refused an x-ray. (*Id*.)

On 9/21/22, Plaintiff's motion to reconsider the denial of *in forma pauperis* status was granted in Case No. 22-3188. On 9/22/22, CO Burnett demanded Plaintiff stop doing burpees because, "You're not tough, Dudley." (*Id*. at 20.) Plaintiff claims that Burnett acted in retaliation on orders from "administrative officials to start harassing the plaintiff." (*Id*.) CO Boone barged into Plaintiff's cell and ripped a sign off his door, waking up Plaintiff in the process. (*Id.*) On 9/27/22, Plaintiff was attacked in his cell by multiple officers for no reason. (*Id*.) Then he was

"battered" by CO Shannon and several other officers in a forced cell move and placed on MRA status. (*Id*.) Plaintiff was kept on MRA status until he was transferred to EDCF. (*Id*.)

At EDCF, Plaintiff was held in administrative segregation based on pending DRs from LCF. Plaintiff states that he refused to plead guilty and retaliation began by CO Dodd denying him breakfast for no reason. (*Id*.) Hearing officers Marley and Galloway would hold initial hearings at EDCF, continue the hearings after hearing Plaintiff's arguments, then conclude them in absentia claiming Plaintiff refused to participate. (*Id*. at 21.) CO Hutchins "beat Plaintiff out of his food" and caused him problems with his peers. (*Id*.) CO Barker issued Plaintiff a false DR claiming Plaintiff battered her. (*Id*.) CO Grimmet attacked Plaintiff for no reason.

Plaintiff asserts that Centurion has been aiding KDOC's retaliation on Plaintiff by discontinuing Plaintiff's anxiety and pain medications and muscle relaxers and through repeated crisis level placements to exacerbate Plaintiff's anxiety and ADHD. (*Id*.) Plaintiff describes Centurion's motive as avoiding liability for refusing to treat Plaintiff's ADHD. (*Id*. at 22.)

Last, the Complaint alleges that Plaintiff filed a pleading in court on 12/27/22 and was placed on MRA status on 12/28/22. He claims the unit team "doctored the date" so it appears he was on MRA status before he filed the pleading. (*Id*. at 22.) Then, CO Hutchins denied Plaintiff his shower on 1/16/23. (*Id*.)

Plaintiff names the following defendants: (1) CO Warren (Hutchinson Correctional Facility; "HCF"); (2) CO Gonzalez, HCF; (3) CO Hoffman, HCF; (4) CO Smith, HCF; (5) CO Flores, HCF; (6) CO Kipp, HCF; (7) CO VanHoose, HCF; (8) Warden Dan Schnurr, HCF; (9) CO Agnew, HCF; (10) CO Hertel, HCF; (11) CO Johnson, HCF; (12) CO Pettijohn, HCF; (13) CO Clune, HCF; (14) CO Brown, HCF; (15) CO Williams, HCF; (16) CO Simon, HCF; (17) – (22) six unknown SST officers at HCF; (23) Centurion, contractor providing health care to KDOC

prisoners; (24) Hope Fike, Behavioral Health Coordinator at HCF; (25) FNU Stansbury, Behavioral Health Provider at HCF; (26) Dr. Emmanuel Okeke, psychiatric provider at HCF; (27) APRN Ferguson, psychiatric provider at HCF; (28) Hutchinson Correctional Facility; (29) Warden of Lansing Correctional Facility ("LCF"); (30) Chief of Security at LCF; (31) CO Hartley, LCF; (32) CO Brooks, LCF; (33) CO Latzke, LCF; (34) CO Wildermuth, LCF; (35) CO Oplinger, LCF; (36) CO Busby, LCF; (37) CO McCurrie, LCF; (38) CO Lechliter, LCF; (39) CO Garrison, LCF; (40) CO Hearn, LCF; (41) CO Shannon, LCF; (42) CO Burnett, LCF; (43) CO Boone, LCF; (44) – (48) six unknown SST officers at LCF; (49) FNU Koster, behavioral health provider at LCF; (50) Megan LNU, behavioral health provider at LCF; (51) APRN Darr (Centurion employee at LCF);  (52) Dr. Jay Barone; (53) Dr. Nelson; (54) Lansing Correctional Facility; (55) Tommie Williams, Warden of EDCF; (56) Deputy Warden Bos, EDCF; (57) UTM Hepner, EDCF; (58) CO Marley, EDCF; (59) CO Galloway, EDCF; (60) CO Dodd, EDCF; (61) CO Stevenson, EDCF; (62) CO Hutchins, EDCF; (63) CO Babbcock, EDCF; (64) CO Holland, EDCF; (65) CO Traylor, EDCF; (66) CO Barker, EDCF; (67) Shara Wark, behavioral health provider employed by Centurion at EDCF; (68) FNU Davis, behavioral health provider employed by Centurion at EDCF; (69) unknown behavioral health provider employed by Centurion at EDCF; (70) unknown APRN at EDCF; (71) unknown doctor at EDCF; (72) El Dorado Correctional Facility; (73) Jeff Zmuda, Secretary of Corrections; (74) Darcie Holthaus, Secretary of Corrections Designee; (75) Alicia Cardona; Behavioral Health Director of Centurion; (76) Dr. Warley; (77) Dr. Weeper; and (78) the Kansas Department of Corrections.  Plaintiff seeks redress in the form of compensatory and punitive damages.

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual

allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. Discussion

#### A. Retaliation

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (brackets and internal quotation marks omitted). "Nor may prison officials retaliate against prisoners for filing administrative grievances." *Leek v. Miller*, 698 F. App'x 922, 925 (10th Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)).

A prisoner may state a claim of unconstitutional retaliation by demonstrating the following elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Leek*, 698 F. App'x at 925 (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007)).

An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990) (plaintiffs must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50

(10th Cir. 1990); *Peterson*, 149 F.3d at 1144)); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

"[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson,* 149 F.3d at 1144. Furthermore, "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Id.*

In his Complaint, Plaintiff describes many incidents occurring at HCF, LCF, and EDCF. Most of the incidents involve petty annoyances that occur as part of the normal conditions of confinement and do not meet the second element of a retaliation claim. For example, Plaintiff alleges he was harassed by officers in the chow hall; he received short rations for some period; corrections officers were "extremely argumentative" with him; an officer told him to stop doing burpees and taunted him; he was denied a shower on one occasion; and an officer barged into Plaintiff's cell and ripped a sign off his door, waking him up.

Plaintiff does make some more serious allegations. However, where he falls short in stating a claim for retaliation is in the third element. Many times, it appears that the defendants' conduct was more likely to be motivated by Plaintiff's own actions or a general dislike as by Plaintiff's exercise of his First Amendment right of access to the courts. In only two instances does Plaintiff refer to something more than a conclusory, unsupported allegation of retaliation or an assertion that temporal proximity to a legal filing shows a retaliatory motive. *See Leek*, 698 F. App'x at 926 (finding that where the only allegation that supports a retaliation claim is the close temporal proximity of the complained of conduct to the protected activity, the plaintiff has not provided

sufficient circumstantial proof of a retaliatory motive to state a claim). First, he claims that CO Smith said to him, "You don't sue our officers." (Doc. 1, at 13.) He alleges that she said this when he was in segregation at HCF. Plaintiff then claims that Smith caused him to be kept in segregation for additional time when the review board had voted to return him to the general population. (Doc. 1, at 14.) Second, Plaintiff alleges that CO Flores said to him, "You think you are going to sue us and batter our officers and get away with it?" (Doc. 1, at 17.) Plaintiff states that Flores then assembled a team of officers and forced Plaintiff onto crises level by spraying him with two full cans of pepper spray and having officers beat him up. (Doc. 1, at 17; *see also* DR, Doc. 1-3, at 4.) This also occurred at HCF.

The second incident demonstrates the difficulty of showing that retaliation for constitutionally protected activity was the "but for" cause of allegedly retaliatory actions. Plaintiff attaches the DR he was issued after the incident. (Doc. 1-3, at 4.) Flores states in the DR that Plaintiff was given an order to give staff the pants and boxers he had as they were not on his allowable property list for crisis level. According to Flores's account, Plaintiff refused. A cell extraction team was summoned, and before entering the cell, Plaintiff was given multiple chances to turn over the items. He continued to refuse, and the team used pepper spray. Plaintiff still refused, so the team entered the cell and removed the items. During the process, Plaintiff grabbed Flores's wrist through the food port of the cell door. Plaintiff was charged with disobeying orders and battery. *Id*.

Even if Plaintiff disagreed with Flores's order and felt it was unfair, a prisoner is not entitled to pick and choose which lawful orders to obey. The fact that he has exercised his right to access the courts does not inoculate him from having to obey orders or prison rules. *See Peterson,* 149 F.3d at 1144. The Court cannot reasonably infer that Plaintiff would not have been

disciplined but for Flores's retaliatory motive, even in light of her alleged statement. *See Turner v. Falk*, 632 F. App'x 457, 460 (10th Cir. 2015) (where plaintiff admitted in his complaint that he disobeyed instructions and violated prison rules, court could not infer retaliatory motive and plaintiff failed to state a claim).

For these reasons, the Court finds that Plaintiff's retaliation claim is subject to dismissal for failure to state a claim.

### B. Other Claims

Plaintiff includes a list of additional claims, such as violation of the Americans with Disabilities Act, excessive force, deficient health care, violation of the Equal Protection Clause, violation of his right to due process, and the state torts of assault and battery, medical malpractice, intentional infliction of emotional distress, abuse of a dependent person, and harassment, but he makes no effort to differentiate which allegations support which claim or which persons are defendants to which claim. He has not included different counts in his Complaint with supporting factual assertions for each. These claims are subject to dismissal.

Plaintiff is given the opportunity to file an amended complaint. If he chooses to do so, he should include a separate count for each claim with supporting facts, as indicated on the court-approved form.

### C. Improper Defendants

The State and its agencies such as the Department of Corrections are not "persons" that Congress made amenable to suit for damages under § 1983. *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989)("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983. *See Will*, 491 U.S. at 66, 71 (neither state nor state agency is a "person" which can be sued under § 1983); *Davis v. Bruce*, 215 F.R.D. 612, 618 (D. Kan. 2003), *aff'd in relevant part*, 129 F. App'x 406, 408 (10th Cir. 2005).

Therefore, the KDOC, HCF, LCF, and EDCF are all subject to dismissal from this action.

### D. Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

Of the seventy-eight (78) defendants named by Plaintiff, only twenty-two (22) are mentioned in the Complaint outside of the listing of defendants. Of those twenty-two (22), only two (2) are alleged to have evidenced a retaliatory motivation, as explained above. The remaining seventy-six (76) defendants are subject to dismissal.

## IV. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff should use the form complaint provided to him with the Court's Notice of Deficiency. Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (23-3074-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 31, 2023,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 31, 2023**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS SO ORDERED**.

**Dated May 1, 2023, in Kansas City, Kansas.**

>**S/ John W. Lungstrum**
>**JOHN W. LUNGSTRUM**
>**UNITED STATES DISTRICT JUDGE**